CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 1 1 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SANDRA M. DAVIS, | ) |
| Plaintiff, | ) Case No. 7:15-cv-000131 |
| v. | ) |
| LENDMARK FINANCIAL SERVICES, LLC, | ) By: Hon. Michael F. Urbanski<br>) United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the court on the motion of defendant Lendmark Financial Services, LLC ("Lendmark") to compel arbitration and stay the instant proceedings. ECF No. 12. Lendmark contends that plaintiff Sandra Davis ("Davis") accepted its offer of employment online, and that this offer was expressly contingent on her consent to arbitration. Davis disagrees, stating that she does not recall seeing the offer letter that mentioned arbitration or accepting the offer online. Davis' online acceptance of the offer letter referencing arbitration is a material fact in dispute. As such, the court will **DENY** the motion to compel without prejudice and hold a jury trial to determine this discrete matter of fact.

### I.

Davis applied to Lendmark for employment in February, 2014 by accessing the Lendmark website and submitting her application and resume. Davis Dep., ECF No. 31-2, at 10. Lendmark asserts that Davis' application process was completed by means of a third-party online service, ADP VirtualEdge. According to Lendmark, the application process required Davis to set up a password-protected account. For her part, Davis professed no memory of having to set up an account under her name in order to submit her application, but acknowledged that she applied by means of the

1

Lendmark website. Id. at 17-18. Davis initially applied for a branch manager position but received an email in late March, 2014, indicating that someone else had been hired for that position. Id. at 24. On April 15, 2014, Davis then applied for a customer service position with Lendmark by using its website and uploading her resume. Id. at 25. Davis was interviewed for this position on April 22, 2014, and received an email about a job offer on April 28, 2014. Id. at 33-34. Davis' testimony regarding this sequence of events was clear.

> Q. Then you had a job interview on 4/22; correct?
>
> A. Correct.
>
> Q. And then the next thing that happened was you received an e-mail on 4/28. Correct?
>
> A. Correct.

Id. at 33. The April 28, 2014 email stated that "[w]e are pleased to confirm the details of our offer for the Customer Service Representative III position. Please use the link below to view your offer and provide feedback." Id. at 34. While Davis admits receiving this email, she professes no recollection of clicking on the link or viewing the offer letter.

> Q. Okay. Now did you click on the link?
>
> A. I don't recall clicking on the link. I don't recall it.
>
> Q. You don't recall not clicking on the link; right?
>
> A. I don't recall it either way. I don't remember.
>
> Q. But you know you got the e-mail?
>
> A. I know I got the e-mail.

Id. at 35.

Whether Davis accessed the offer letter by means of the link in the April 28, 2015 email is important because the letter stated that "this offer is contingent upon your acceptance of, and agreement to comply with, the terms and conditions of the Company's Arbitration Program and

2

Agreement." ECF No. 34-1, at 7. Davis testified repeatedly that because she had no recollection of clicking the link to view the offer letter, she "never saw anything about arbitration." Davis Dep., ECF No. 31-2, at 132. Davis argues that she does not remember accepting Lendmark's offer online using VirtualEdge and thus did not agree to arbitration. Instead, Davis recalls several telephone conversations with Charles ("Chip") Kidd, a Branch Manager for Lendmark, concerning the results of her interview, her request for more money, and her acceptance of the job. Id. at 60-71.

Lendmark presented evidence supporting its position that Davis agreed to arbitration by accepting the offer letter online. Through the VirtualEdge online service, Lendmark is able to track a job applicant's progression through the hiring process. Lendmark introduced a VirtualEdge Candidate Tracking Summary showing that Lendmark extended the offer to Davis at 10:37 a.m. on April 28, 2014 and that Davis accepted it at 4:01 p.m. the same day via the website. ECF No. 32-1, at 3.

Lendmark's internal email communications corroborate Davis' online acceptance. Kidd emailed Lendmark Human Resources at 10:11 a.m. on April 28, 2014 advising that Davis had accepted the customer service position. ECF No. 32-1, at 23. The email trail shows that at 3:52 p.m. on April 28, 2014, Shalon Travis, a Lendmark Human Resources Representative, reported to Kidd that "Sandra has not accepted our offer yet therefore we cannot begin the background screening. I know that you wanted her to start Monday 05/05 but I do not think that will happen if we do not begin the background screening today." ECF No. 32-1, at 24. Twelve minutes later, at 4:04 p.m., Kidd emailed Travis that "I just spoke to her. .she has accepted the job online." ECF No. 32-1, at 23.

Consistent with both the VirtualEdge Candidate Tracking Summary and Lendmark's internal emails, Kidd averred as follows:

> 5. As reflected in the attached email chain, on April 28, 2014, I spoke to Davis via telephone regarding her offer of employment by Lendmark. Davis relayed during

3

> the telephone call with me that she had accepted Lendmark's offer of employment electronically online.
> 6. An applicant to whom Lendmark has made an offer of employment may not proceed to the next step in the application/employment process until the applicant has accepted Lendmark's offer of employment electronically online.

Kidd Decl., ECF No. 32-1, at ¶¶ 5-6.

Davis discounts the verity of the VirtualEdge Candidate Tracking Summary by stating that she was working at TitleMax on April 28th at 4:01 p.m., could not use TitleMax's computers to access her personal e-mail, and, at the time, "had a refurbished Android cell phone with a small screen that did not permit me to read documents on my phone very easily." Davis Decl., ECF No. 31-3, at ¶¶ 5-7. She further averred, "I do not recall Chip Kidd calling me and telling me that I had to also electronically accept the offer of employment. But, to the extent this happened, I know I could not have done so at 4:01 p.m. on April 28, 2014. I would have to have provided my e-mail login information to Chip to do so for me." Id. at ¶ 8.

Davis began work with Lendmark on May 5, 2014, and her employment terminated on March 1, 2015.

On March 25, 2015, Davis sued Lendmark for violations of the Americans with Disabilities Act, the Age Discrimination and Employment Act, and Title VII of the Civil Rights Act. When Lendmark moved to compel arbitration, Davis sought discovery on the issue of the arbitration agreement. Following a hearing held on September 24, 2015, the court granted Davis' request to undertake certain discovery, ECF No. 26, after which the parties submitted supplemental briefing. The court held a second hearing on February 19, 2016, and the issue is now ripe for adjudication.

## II.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-6 (2012), "represents 'a liberal federal policy favoring arbitration agreements.'" Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983)). "When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings . . . and compel arbitration in accordance with the agreement's terms." Id. (citing 9 U.S.C. §§ 3-4 (2012)). "It is clear that 'even though arbitration has a favored place, there must still be an underlying agreement between the parties to arbitrate.'" Atkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir. 2002) (quoting Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997)). The question of whether a party agreed to arbitrate requires application of "ordinary state law principles governing the formation of contracts." Chorley Enters. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 939, 944 (1995)).

Under Virginia law, an agreement to arbitrate "must contain the essential elements of a valid contract at common law." Mission Residential, LLC v. Triple Net Properties, LLC, 275 Va. 157, 160-61, 654 S.E.2d 888, 890 (2008). "It is elementary that mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts." Lacey v. Cardwell, 216 Va. 212, 223, 217 S.E.2d 835, 843 (1975). "Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." Persinger & Co. v. Larrowe, 252 Va. 404, 408, 477 S.E.2d 506, 509 (1996). A court must "ascertain whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind." Phillips v. Mazyck, 273 Va. 630, 636, 643 S.E.2d 172, 175 (2007).

Section 4 of the FAA provides that if the parties dispute the making of an arbitration agreement, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4 (2012). "The right to a jury trial under Section 4 of the FAA, however, is not automatic. Rather, the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists—and must also show sufficient facts in support." Chorley Enters., 807 F.3d at 564 (citing Oppenheimer & Co. Inc. v.

5

Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)); see also Green v. Zachry Indus., Inc., 36 F. Supp. 3d 669, 673 (W.D. Va. 2014) ("[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; instead, the party must identify specific evidence demonstrating a material factual dispute."(citations omitted)). This standard of review is "akin to the burden on summary judgment." Id. Accordingly, "the party requesting a jury trial under Section 4 must provide sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law." Chorley Enters., 807 F.3d at 564.

### III.

Davis claims never to have seen the offer letter or any reference it makes to her employment being conditioned on arbitration. While Davis admits that she got the email containing the link to access the VirtualEdge online portal and her offer letter, she claims she did not read it until her lawyer found it for her during discovery. Davis Dep., ECF No. 31-2, at 57; ECF No. 37, at 77. In her declaration, Davis suggests that she may have asked Lendmark's Chip Kidd to accept the offer for her. For its part, Lendmark insists that its records show that Davis accepted the offer—conditioned on arbitration—through the VirtualEdge online portal on April 28, 2014 at 4:01 p.m. and that Davis contemporaneously told Chip Kidd of Lendmark that she had done so. To a substantial extent, therefore, the existence of the arbitration agreement in this case turns on the credibility of Davis and Kidd as to the events of April 28, 2014. As a result, there is a genuine issue of material fact as to the existence of the arbitration agreement requiring resolution of this discrete issue by a jury. 9 U.S.C. § 4 (2012); see Brent v. Priority 1 Auto. Group, 98 F. Supp. 3d 833, 837-38 (D. Md. 2015); Whitten v. Apria Healthcare Group, Inc., No. PWG-14-CV-3193, 2015 WL 2227928 (D. Md. May 11, 2015).

6

## IV.

The parties are directed to contact the Clerk and schedule a one day trial on this limited factual issue. The trial is to be held within the next ninety (90) days.

Accordingly, Lendmark's motion to compel arbitration, ECF No. 12, is **DENIED** without prejudice to being resubmitted on request, following the jury trial.

An appropriate Order will be entered.

Entered: 03-11-2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge